# Hall & Farley, Trustees v. Henderson.

*Bill in Equity by Judgment Creditors of Corporation to reach Equitable Assets.*

| 114 | 601 |
| 115 | 239 |

| 114 | 601 |
| 121 | 111 |

| 114 | 601 |
| 123 | 374 |

| 114 | 601 |
| s126 | 480 |

| 114 | 601 |
| 128 | 657 |

| 114 | 601 |
| 132 | 112 |

| 114 | 601 |
| 134 | 505 |

| 114 | 601 |
| 137 | 147 |

1. *Corporation; right of judgment creditor to maintain bill to reach equitable assets.*—A single judgment creditor of an insolvent corporation with a return of execution "no property found" can maintain a bill in equity to subject the unpaid subscriptions to the capital stock in a corporation or other equitable assets of a corporation to the payment of its debts.

2. *Equity pleading; multifariousness of bill.*—A bill in equity may be filed in a double aspect, embracing alternative averments for relief, provided each aspect entitles the complainant to substantially the same relief, and the same defenses are equally applicable to each.

3. *Corporation; right of judgment creditor to maintain bill to reach equitable assets; multifariousness.*—Where a bill filed by a judgment creditor of an insolvent corporation with a return of execution "no property found," to subject equitable assets of the corporation to the payment of his debts, alleges in one aspect that the defendant is a stockholder owing unpaid subscriptions to the capital stock, which, by fraudulent arrangement with the officers of the corporation appeared to be paid, and averring in another aspect that by fraudulent collusion with the same officer of the corporation the defendant has obtained possession of property belonging to the corporation, knowing that no consideration has been paid therefor, and in the prayer for relief as to the first aspect of the bill it was asked that the unpaid subscriptions be subjected to the payment of its debts, and as to the other aspect, asking in the alternative, if the subscription has been paid, that the defendant be made to pay out of such assets an amount equal to the complainant's debt, such bill is not multifarious, inconsistent or repugnant, since each aspect of the case entitles the complainant to substantially the same relief, in that a money decree would be rendered in either, and the fraud averred is the same in either alternative, so far as defenses to it are concerned.

4. *Same; same; not necessary that such bill should be a general creditor's bill.*—It is no objection to a bill filed by a single judgment creditor of a corporation with a return of execution "no property found," to subject equitable assets of such corporation to the payment of his debts, that it is not filed on behalf of all the creditors of the corporation.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. JOHN G. WINTER.

The bill in this case was filed by the appellants, Hall & Farley, as trustees, against Fox Henderson and the Alabama Terminal & Improvement Company and the Farley National Bank, to collect a judgment which was recovered by the receivers of the Farley National Bank against the Alabama Terminal & Improvement Company, and subsequently transferred to the complainants. This judgment is sought to be collected from the respondent, Fox Henderson, who, as averred in the bill, has assets of the Alabama Terminal & Improvement Company in his hands, and is indebted to said corporation. The averments of the bill and the purposes for which it was filed are sufficiently stated in the opinion. This bill was demurred to upon the following grounds: "1. To the whole bill, that it is nowhere stated in said bill who Hall & Farley are trustees for; that, they sue only as trustees without giving the name of the *cestui que trust*.

"2. That said bill is multifarious in this: Said bill is filed in the alternative, or in a double aspect, presenting inconsistent and repugnant claims for relief. The relief that could be granted in one aspect would be materially variant from the relief that could be granted in the other in this: Said bill in one of its aspects charges that respondent has never, in fact, made any *bona fide* payment of his said subscription to the capital stock of the Alabama Terminal & Improvement Company, but still owes the same; and in the other aspect, it charges that if a *bona fide* payment of the stock subscription was made, then he is liable for the assets of the company, with interest thereon received by him knowingly, without proper or legal consideration of said company. The relief that could be granted in the first aspect, would be to be held as *trustee in invitum* for the assets converted.

"2½. Said bill is filed in a double aspect upon antagonistic rights. The relief prayed for in the phase of no *bona fide* settlement having been made, is to hold the respondent liable under his contract of subscription; and the relief prayed for in the phase of respondent being trustee *in invitum*, is to hold him liable for his tort in converting the assets of the company. The remedy

[Hall & Farley, Trustees v. Henderson.]

being inconsistent, and calling for an election of remedies.

"3. Respondent demurs to so much of said bill, or to the aspect thereof, that seeks to hold respondent liable for the stock subscribed for, on the grounds that his settlement for the sum was colorable and not real, and assigns the following grounds : The bill fails to aver as a fact that respondent did sell his stock to J. W. Woolfolk or A. C. Saportas, or to the A. T. & I. Co., and fails to aver such facts from which it could be inferred that such sale was made.

"4. Said bill fails to allege any fact showing why said corporation could not purchase its own stock.

"5. Said bill fails to allege that said corporation was insolvent at the date of the sale of the stock by respondent, or at the time the payments were made therefor.

"6. Because the complainants have a full, complete and adequate remedy at law for the recovery of the stock that was subscribed for by respondent.

Respondent demurs to so much of, or to such part of the bill presenting the aspect of holding the respondent liable as trustee *in invitum* for the value of the assets of said corporation improperly received and converted by him, and assigns the following grounds :

"7. Because the bill fails to allege that said corporation was indebted to J. W. Woolfolk and A. C. Saportas, one or both of them, in an amount equal to the amount claimed to have been paid to this respondent.

"8. Because said corporation is not alleged to have been insolvent at the time such payments were made to respondent.

"9. Because no fact is charged showing that respondent as a director, or as treasurer of said corporation knew that the funds with which he was paid for said stock belonged to the A. T. & I. Co.

"10. Because it is not shown by what right complainants seek to condemn in the hands of respondent trust funds received and converted by him.

"11. Because the bill is not filed for the benefit of the other creditors of said corporation.

"12. Because the trust funds conveyed by respondent would be subject alone to a general creditor's bill.

"13. The funds of the corporation, which is insolvent, are trust funds for the benefit of the creditors of said

corporation, and, to condemn the same, the bill must be filed by the creditors of the corporation.

"14. The complainants have a full, complete and adequote remedy at law for the recovery of the trust funds, received and converted by respondent.

"15. Because it is not averred that respondent knew, or had knowledge of the insolvency of said corporation at the time he received the assets in payment for his stock."

On the submission of the cause upon the demurrers, the chancellor decreed that the 1st, 11th, 12th and 13th grounds of the demurrer were well taken, and sustained them, and overruled all the other grounds of demurrer. After this decree, the bill was amended by adding, after the averments of the bill as to the recovery of the judgment by the receiver of the Farley National Bank, the reinstating of the bank, and the transferring of the judgment to the present complainants, the following averments : "And by said transfer and assignment invested orators with all the rights and powers of said Farley National Bank in reference to said debt and against all persons in any manner liable therefor, including the right to credit the same for the benefit of the stockholders of said bank."

The cause was then re-submitted upon the same grounds of demurrer, and as thus amended all the grounds of demurrer were overruled except the 11th, 12th and 13th, and these grounds were sustained. From this decree the complainants appeal, and assign the rendition thereof as error.

TOMPKINS & TROY and GUNTER & GUNTER, for appellants.—1. The complainant did not have a full, adequate and complete remedy at law.

This suit is essentially to have *an equitable execution* levied on *equitable assets* of the ·debtor corporation. It has long been settled that a judgment is not a contract for the payment of money under section 2594 of the Code of 1886, permitting suits in the name of the party really interested.—*Smith v. Harrison*, 33 Ala. 706; *Wolff v. Eberlein*, 74 Ala. 99. And thus, that a suit at law on the judgment is properly brought, "notwithstanding its assignment, in the name of the original plaintiff." The right of the complainants, therefore, to proceed in their

[Hall & Farley, Trustees v. Henderson.]

own names in any manner for recovery on or satisfaction of the judgment assigned to them is only equitable, and therefore in equity. But if the judgment had been recovered by them in their own names, they could only proceed by garnishment (Code, § 2972) for satisfaction out of debts due for subscription to the corporation; and this being a statutory remedy, if full and adequate, would not interfere with the original jurisdiction of equity prevailing anterior to the enactment of the statute. *Waldron, Isley & Co. v. Simmons*, 28 Ala. 629; *Westmoreland v. Foster*, 60 Ala. 455. Here, however, the complainants are only assignees of the judgment—and they must therefore proceed in equity. And they might have done so if the judgment had been in their own names. See the numerous authorities cited to §204 of 1 Cook on S. and Stockholders; *Hatch v. Dana*, 101 U. S. 205.

2. It was no objection to the bill that it was not framed as a general creditors' bill.—*Hatch v. Dana*, 101 U. S. 205; *Hollins v. Brierfield C. & I. Co.*, 150 U. S. 371; *O'Bear v. Volfer*, 106 Ala. 205; *Pollak v. Muscogee Manfg. Co.*, 108 Ala. 467; *Barrett & Co. v. Pollak Co.*, 108 Ala. 390.

J. M. & P. W. WHITE, and R. L. HARMON, *contra*.
1. The bill was inconsistent and repugnant, and therefore the demurrers raising multifariousness should have been sustained.—3 Brick. Dig., 378, § 183; *Caldwell v. King*, 76 Ala. 156; *Moog v. Talcott*, 72 Ala. 210.

2. The averments of the bill do not show any fraud in the alleged transactions between the defendant and Woolfolk and Saportas.—1 Brick. Dig., 701, § 898; *Duckworth v. Duckworth*, 35 Ala. 70; *Spence v. Duren*, 3 Ala. 251. The weight of authority in the United States supports the view that a corporation can buy its stock in good faith.—1 Amer. & Eng. Encyc. of Law, 676. It seems, though, that a creditor can set it aside.—*Glenn v. Hatchett*, 91 Ala. 316.

3. The bill shows that there were other creditors of the corporation, and it should have been filed in behalf of the complainants and such other creditors as desired to come in.—*Friend v. Powers*, 93 Ala. 114; *Smith v. Huckabee*, 53 Ala. 191; 3 Amer. St. Rep. 808, 810, 815 and note; Thompson on Corporations, § 6567 and note; Story's Eq. Pleading, § 210 and note.

[Hall & Farley, Trustees v. Henderson.]

4.   It was decided by this court as far back as the case of *Allen v. Montgomery R. R. Co.*, 11 Ala. 437, that where complainants have an adequate remedy at law, by garnishment, to collect the subscription due the corporation by defaulting subscribers, that a court of equity has no jurisdiction to entertain the case.—*DeMony v. Johnston*, 7 Ala. 51; *Chamberlain v. Bromberg*, 83 Ala. 576.

HARALSON, J.—This bill was filed not to administer the assets of an insolvent corporation for the benefit of all its creditors, on the theory, no longer obtaining in this court, that the stock and other property of a corporation is deemed a trust fund for the payment of the debts of the corporation; but it is one by appellants, a single judgment creditor of the corporation, with a return of execution "no property found," to reach equitable assets of the corporation in satisfaction of their judgment at law, and filed for such purpose on two theories, in reference to the same transaction.

*First.*   The defendant, Henderson, as is shown, subscribed to the capital stock of the Alabama Terminal & Improvement Company, a corporation under the laws of this State, the sum of $30,000, which by the terms of subscription, became due and payable.   He was a director and the treasurer of said corporation, and co-operated with J. W. Woolfolk, who was president and general manager, and who, as such, had the entire control and management of the business of said corporation, as said Henderson well knew.   A. C. Saportas was also a director, who, it is alleged, was entirely under the control and management of said Woolfolk, in reference to the management of the business of said Terminal Company. It is alleged, as presenting Henderson's claim, that he asserts, that he has paid his said subscription of stock in full, and that afterwards, he sold and transferred the same to said J. W. Woolfolk and A. C. Saportas,—to one or both of them, and that they or the one buying his stock, agreed to pay him $30,000 therefor.

The bill avers, touching this transaction, that if said sale and assignment were made to said Woolfolk and Saportas, as claimed by Henderson, it was merely colorable, and was in fact a sale of said stock to the said Terminal Company; that said Henderson was of ample ability to pay and satisfy his said debt and liability to

[Hall & Farley, Trustees v. Henderson.]

said company, but was anxious and desirous to escape therefrom ; and that he knew that said Woolfolk was largely indebted to said company for his own subscription of stock and otherwise, and said company was also largely indebted, and hastening to insolvency. It is also averred, that said Henderson well knew that said Woolfolk was, at the time, carrying out a scheme for withdrawing a very large amount of the assets of said company from its treasury, by buying up at par, in the name of the company, large amounts of the stock of the subscribers to its capital stock, and paying for the same with the assets of the company without any authority whatever,—the persons thus favored by said Woolfolk being the brothers and relations, partners and neighbors of said Henderson ; that said Woolfolk, as president and general manager, having incurred large debts for the company, and being unable to use to advantage the assets in his hands belonging to the company, owing to the financial depression in the country, proposed to a number of subscribers for stock of said company residing at Troy, Alabama, among whom were the said Henderson and his brothers, relatives, partners and acquaintances, that they could get rid of their stock and avoid all liability therefor, and at the same time provide for his present need of money, by paying in cash their subscriptions for stock, and by his buying the stock thus paid for, in the name of and for the company, and paying for the same in assets of the company in his hands at a certain price, generally, in bonds of the Alabama Midland Railroad Company, belonging to the said Improvement Company, at 85 cents on the dollar ; and this plan was carried out with a number of said subscribers, of all of which said Henderson was informed.

But, as to said Henderson and in his case, it is averred, that on account of his relation to said company, or for some other reason, for his supposed security it was arranged, that he should pay up his stock subscription of $30,000 in full, and that said Woolfolk and Saportas should buy his stock and execute to him their three notes, each, for $10,000, payable, respectively, in 30, 45 and 60 days from date, the said Henderson retaining the stock as collateral for securing their payment ; and that these notes should be charged up to and paid by said company, as a purchase by it of said stock, and this plan

was carried into effect between them; that said notes, on the 5th of January, 1891, were entered on the books of the company on bills payable account, as debtor, in the sum of $30,000, and a corresponding entry on the credit side of the cash book of said company, was made in these words: *"Investment Acct. Dr. Bought of Fox Henderson 300 shares capital stock of A. T. & I. Co. In suspense. $30,000;"* that said notes were renewed from time to time, and continued on the books of the company as its obligations, and were paid in part, from time to time, out of the funds of said company, of all of which said Henderson had full knowledge; that at the time of such payments, said Henderson had good reasons to know that said company was largely indebted, if not wholly insolvent, and that the use of said company's money and assets in the payment and discharge of said notes, was a fraud upon complainants and the creditors of said company, and said Henderson received of the money and assets of said company, in the manner aforesaid, after the 5th day of January, 1891,—the date of the entry of said transaction on the books of the company,—the sum of, to-wit, $25,000.

It is again averred, in this connection, that said Henderson never, in fact, paid up his said subscription in full; that the said Woolfolk, in making the settlement with him, allowed him credits for $15,000, or other large sum, to which he was not legally entitled, and that such amount, with interest, in addition to said sum received by him from the assets of said company, since the 5th January, 1891, is still due and unpaid upon said subscription to the capital stock of said company; so that, as complainants aver, the said Henderson has never, in fact, made any *bona fide* payment of his said subscription to the capital stock of said company, but that he still owes the same.

The foregoing presents the case as made by the bill in its first aspect. If its averments are true, one of two things is certain, either that Henderson has made no valid payment at all on his stock, and still owes the same, or that, if he has made any payment, he still owes a large amount of money thereon; and, in either event, by the alleged fraudulent devices resorted to by defendant, Woolfolk and Saportas, to cover up and shield the stock, the right of complainants at law to subject the

[Hall & Farley, Trustees v. Henderson.]

property to their judgment is obstructed, entitling them, therefore, to the aid of a court of equity to remove the obstructions which prevent them from so doing, and to subject equitable assets to the payment of said judgment. *Allen v. M. R. R. Co.*, 11 Ala. 447.

The act of February 18th, 1895, (Acts, 1894-95, p. 881), amending section 2972 of the Code, provides; that "a judgment creditor of a corporation, having an execution returned no property found, may by garnishment subject the unpaid subscription of any stockholder in such corporation, to the payment of his debts, without giving bond or security, and without regard to whether the corporation can maintain suit against such stockholder for such unpaid subscription, or not; or, such creditor may proceed in equity against any one or more of such stockholders, and subject such unpaid subscription without joining the other subscribers, or stockholders, and without regard to whether the corporation has called for such unpaid subscriptions and could maintain suit therefor, or not." The act, in terms, expressly authorizes a single judgment creditor to proceed in equity to subject unpaid subscriptions to his debts. A decree in any case of the kind, therefore, would necessarily be a money decree for the amount of unpaid subscriptions, if the creditor's debt is equal thereto, or for so much thereof, as would equal his debt.—*Hatch v. Dana*, 101 U. S. 205. It is clear, then, that should the court ascertain that Henderson has not paid up his subscription to the stock of the said company, as is averred in the bill, in its first aspect, it would, after ascertaining the amount due by him, whether in whole as subscribed or only as a balance due thereon, render a money decree against him within the limits of the complainants' judgment, for the amount so ascertained to be owing by him. It would look through the alleged fraudulent devices resorted to, to shield defendant from liability, and subject the unpaid stock as an equitable asset to the payment of the judgment, which an execution on the judgment cannot now reach. There is nothing in *O'Bear Jewelry Co. v. Volfer & Co.*, 106 Ala. 205, opposed to what is here said.

*Second.* The second or alternative aspect in which the bill is filed, is presented in the following language, the pertinency of which is dependent in large measure, upon the preceding averments as above recited: "But

if orators are mistaken in the foregoing averment, as to the subscription of the capital stock of said company not having been paid, they aver that subsequent to the 5th of January, 1891, the said Fox Henderson being a director and treasurer of said company, received assets of said company amounting to $30,000, or other large sum knowingly, and without proper or legal consideration to said company, which he is liable for, with interest.'' This averment is stated following and in connection with the ones before referred to, to the effect, that said Henderson had received of the money and assets of said company large sums of money and other assets to which he was not entitled, the receipt of which was a fraud upon complainants and the creditors of the company. In this aspect, the object and prayer of the bill is, that said Henderson may be decreed to pay such money and assets of said Improvement Company, which were improperly received and converted by him, and that complainants' debt may be paid out of the same.

The demurrer to the bill, in the ground mainly relied on is, that it is filed in the alternative, or in a double aspect, presenting inconsistent and repugnant claims for relief; the relief that could be granted in one aspect being materially variant from the relief that could be granted in the other. The court overruled this ground of demurrer. We have deemed it important, however, to fully consider it, for the purpose of another trial, and to settle the main contention on demurrer.

The rule on that subject, as settled in this court, is, that a bill in equity may be framed in a double aspect, embracing alternate averments for relief, provided each aspect entitles the complainant to substantially the same relief, and the same defenses are applicable to each. If the causes of action presented are so distinct as to require inconsistent and repugnant reliefs, and different defenses, the bill is demurrable on the grounds of multifariousness.—*Adams v. Sayre*, 70 Ala. 318; *Bolman v. Lohmdn*, 74 Ala. 510; *Globe I. R. &c. Co. v. Thacher*, 87 Ala. 464.

When the purpose of a bill is single in seeking satisfaction of the complainant's demand out of the debtor's property, which is alleged to have been fraudulently conveyed, or attempted to be placed beyond the reach of execution, it is not multifarious, as we have held,

[Hall & Farley, Trustees v. Henderson.]

although it is exhibited against several fraudulent grantors. Where fraud permeates the whole transaction, it imparts to the suit a singleness of object and purpose.— *Handley v. Heflin*, 84 Ala. 604; *Hinds v. Hinds*, 80 Ala. 227. In *Allen v. M. R. R. Co.*, 11 Ala. 437, referred to above, judgment creditors of the railroad company were suing to obtain payment of their judgments by proceedings against the stockholders, for their unpaid shares of stock, and against its vendee for the proceeds of the property alleged to have been fraudulently conveyed to him, and the bill was held not to be subject to the objection of multifariousness. The court said : "The object of the bill is to reach the equitable assets of the corporation in satisfaction of the complainant's judgment at law. These assets, it seems, are supposed to be of two sorts : 1. Those arising from the right of the corporation to call in its unpaid stock ; and, 2. Those which may be produced by setting aside the alleged illegal conveyance. Now, if this is true, the stockholders have no concern with the allegations which affect the deed ; but, supposing the unpaid subscriptions and the property conveyed to be assets of the company, the creditor has the right to pursue them as such, and is entitled to the aid of a court of equity to remove the obstructions which prevent him from doing so. In *Brinkerhoff v. Brown*, 6 John Ch. 139, the object of the bill, as it is here, was to set aside conveyances as well as to compel payment from defaulting stockholders."

The case before us is stronger than the one just quoted from, for here the same person, Henderson, is the alleged defaulting stockholder, and the party to whom it is alleged the assets of the corporation have been fraudulently transferred, in order to defeat complainants' judgment.

It will not be denied that a debtor cannot give away his property as against his creditors, and that one who acquires it from a donee, with notice, is in no better attitude, as to the creditor, than the donee. Woolfolk and Saportas had no right, as officers of the corporation, to appropriate its assets towards the payment of their own obligations, even if authorized by the company to do so, and if Henderson is the holder of money or property of the said company, which passed out of the company without consideration, as it is alleged, and he knew

that fact, he holds in fraud of the company's creditors, and in trust for them.—Wait on Fraud. Convey., §§ 383-385. To the extent of such a holding a decree would be rendered against him for the satisfaction of a judgment creditor of the company.

Each aspect of the case entitles the complainants to substantially the same relief, and the same defenses are applicable to each. There is no inconsistency or repugnancy of relief. The decree of the court is flexible and adjustable to reach the equities of the case. The fraud alleged in the transaction is the same in either alternative, entitling the complainants to the same character of relief in either case.

The court sustained the demurrer on the 1st, 11th, 12th, and 13th grounds, and overruled it as to the others. The bill was amended to meet the objection raised by the 1st ground. The 11th, 12th and 13th, raised the objection in different forms, but the same in substance, that the bill was not a general creditors' bill, filed for the benefit of all the creditors of the corporation. In this there was error. We find no fault with the decree otherwise. It is reversed, and one will be here rendered overruling the demurrer. The defendant is allowed thirty days in which to answer.

Reversed, rendered, and remanded.

BRICKELL, C. J., not sitting.