# Montgomery Iron Works *et al. v.* Capital City Insurance Co.

*Bill in Equity by Judgment Creditor of Corporation, to Compel Payment of his Claim with Unpaid Subscriptions to the Capital Stock, and to enforce Individual Liability of Stockholders.*

1. *Equity pleading; on appeal from demurrer objections to allowance of motion to strike amendment can not be considered.* On an appeal from a decree of a chancellor overruling respondents' demurrer to a bill in equity and a motion to dismiss the same for the want of equity, the rulings of the chancellor on objections to the allowance of an amendment to the bill and on motions to strike such amendment, can not be considered, although such amendments may be embodied in a decree on the demurrer to the bill and the motion to dismiss the same for the want of equity.

2. *Bill by judgment creditor of corporation to enforce individual liability of stockholders; can be amended by making it common creditors' bill.*—A bill filed by a judgment creditor of a corporation to enforce the individual liability of stockholders and to subject the amount due by them on their subscription to the payment of the complainant's judgment, may be subsequently amended by other creditors of the corporation joining in said suit, though the effect of such amendment be to change the bill from one by an individual creditor into a common creditors' bill.

3. *Subscription to stock of corporation; payment in property must be at its reasonable money value.*—Under the constitutional

[Montgomery Iron Works *et als.* v. Capital City Insurance Co.]

and statutory provisions as they existed under the Code of 1876, (Const. of 1875, Art. XIV, §§ 6, 8; Code of 1876, § 1805), when the subscription for stock in a corporation is made payable in property, the property must be taken at its reasonable money value, and though a margin will be allowed for the honest difference of opinion as to its value, a valuation grossly excessive, knowingly made, is a fraud on creditors of the corporation, and such creditors may proceed against the stockholders individually as for unpaid subscriptions.

4. *Equity pleading; bill by judgment creditor of corporation to reach equitable assets; when discovery asked as an incident, verification not necessary.*—When a bill in equity is filed by a judgment creditor of a corporation to subject the unpaid subscriptions to the capital stock to the payment of the complainant's debt and discovery is sought as an incident to the main object of the bill, it is not necessary that such bill should be verified by affidavit.

5. *Bill by judgment creditor of corporation; amendment; when not barred by the statute of limitations.*—Where a bill is filed by a judgment creditor of a corporation to reach and subject to the payment of its debts the unpaid subscriptions to its capital stock, and it is shown by the bill that complainant's judgment was recovered against the defendant corporation on November 21, 1895, and the original bill was filed on January 17, 1896, and said bill was last amended on September 16, 1901, the right to maintain such a bill and to make the amendment is not barred by the statute of limitations of six years; the right of action not accruing until the recovery of the judgment.

6. *Bill by judgment creditor of corporation to reach equitable assets; when not multifarious.*—Where the judgment creditor of an insolvent corporation, with the return of execution no property found, files a bill to subject the unpaid subscriptions to the capital stock in the corporation to the payment of complainant's claim, and several individuals are made parties defendant to the bill, and it is averred in the bill that all of the said defendants combined together in making the subscription alleged to have been paid by property given in at a fictitious valuation, and that each of them were parties to said fraudulent transaction, such bill is not subject to demurrer upon the ground of multifariousness.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The original bill in this case was filed by the appellee on January 17, 1896, against the Montgomery Iron

Works, a corporation, J. W. Dimmick, A. M. Baldwin, and Geo. W. Craik. It averred the following facts: Dimmick, Baldwin, Chambers, McAdams, Bibb, and Craik, were the promoters and organizers of the defendant corporation, with a capital stock of $50,000, for which the above named parties subscribed and paid by delivering to the defendant corporation $25,000 of property, which they jointly owned. Each of the subscribers received double the amount of stock for which he subscribed; that all of said above named subscribers, except Dimmick, Baldwin, and Craik were insolvent, and each owes one-half the stock he subscribed for, viz.: Dimmick and Baldwin owe $2,500 each, and Craik $1,250; that the defendant corporation issued $50,000 of bonds, of which Dimmick, Baldwin and Chambers received $5,000 each, Bibb $7,500, and Craik $2,500 without payment or promise to pay, and the bonds were a fictitious increase of indebtedness; that all these parties transferred said bonds before they were due, and the defendant corporation paid interest on the same from 1887 to 1895. Dimmick, Baldwin and Craik were liable for the money, viz., face value of the bonds and the interest. The other $25,000 of said bonds were afterwards pledged to the First National Bank. Complainant has the $7,500 of bonds issued to Bibb, obtained them by pledge from Mrs. Bibb, without notice of improper issue, and has obtained judgment on the same for $7,966.60, in the circuit court of Montgomery, upon which execution has been returned "no property found." The prayer is that Dimmick and Baldwin be required to pay $2,500 each for bonds and $2,500 each for unpaid stock subscriptions, and that Craik be required to pay $1,250 for bonds and the same amount for stock.

After demurrer and motion to dismiss had been sustained, the complainant amended the bill. The facts averred in amended bill were substantiallly as follows: Dimmick, Baldwin, Chambers and Bibb (omitting McAdams and Craik) were the promoters and organizers of the defendant corporation, with capital stock of $50,000. The defendant corporation was organized as a successor to the Montgomery Iron Works Company, which had sold its plant to Dimmick, Bald-

win and Chambers at a special consideration of $50,000, but Dimmick, Baldwin and Chambers only gave $22,900, or some other sum short of $50,000, and that whatever they did pay, they paid in claims held by the First National Bank against said old company; that Dimmick, Baldwin and Chambers were officers of said bank, and took the deed to the property purchased in their own names, but really as trustees for said bank in payment of its demands against said old company; that Dimmick, Baldwin and Craik associated Bibb with them on his agreement to pay $7,500 for purchase of said plant at $25,000; that a commission to take subscriptions to the capital stock issued to Dimmick, Baldwin, Chambers and Bibb, and it was their purpose, together with Craik, another officer of said bank, whom they had associated with them, to furnish the plant of said old company, worth not more than $25,000, to the defendant corporation in payment for $50,000 or $45,900 of its capital stock to themselves as subscribers and $25,000 of the bonds of said defendant corporation to be issued to them. Dimmick, Baldwin, Chambers and Bibb were officers and directors, and there were only two other directors, Rowlan and Nelson, and an agreement was made by which $50,-000 of bonds of the defendant corporation were issued, of which Dimmick, Baldwin, and Chambers each received $5,000, Bibb $7,500, and Craik $2,500 without pay or promise to pay, and the remaining $25,000 was turned into the treasury of the defendant corporation; that the subscription for stock was payable in money, or, if in property, no entry was made of the money value of the property; that the effect was a fictitious increase of stock and indebtedness and void to the extent it was more in value than the payment; that Dimmick, Baldwin and Chambers each subscribed for 92, Bibb 137, Craik 46. C. B. Wilkins 20, Geo. M. Wilkins 11. McAdams 5 shares, and Nelson, Boses Bros., Howland, Gaston, and Clopton one share each; that the shares of Nelson, Moses, Howland, Gaston and Clopton were given to them by Dimmick, Baldwin and Chambers and paid for in transfer of the plant which was worth about one-half the stock attempted to be paid for with said plant, and the amount

of bonds and stock issued to them was a fictitious increase of indebtedness and stock to the extent that they were in excess of the value of the plant; that there was default by the defendant corporation in payment of interest on the said bonds, and the trustee under the mortgage took possession of the property. All bonds issued to incorporators except those to Dimmick and Baldwin (who now own theirs) have been disposed of. All stockholders except Dimmick, Baldwin and Craik are insolvent. The prayer is amended by asking that Dimmick, Baldwin and Craik be held liable for whatever amount is shown to be due.

On September 16, 1901, the complainant, against the objection of Dimmick, Baldwin and Craik, amended its said bill so as to aver in substance as follows: Complainant sues in behalf of itself and all other creditors of the Montgomery Iron Works who are entitled to the benefit of a creditors' bill, and who come in and contribute; that complainant is a judgment creditor of the Montgomery Iron Works, a corporation which was organized under the laws of Alabama in August, 1886; that its judgment was rendered in the city court of Montgomery for $7,966.66 in November, 1895, and execution thereon was returned "no property found" before the filing of the original bill, and the debt is unpaid; that the defendant corporation is insolvent, and its plant has been sold; that in August, 1886, Dimmick, Baldwin, Bibb and Chambers were the promoters and commissioners for the organization of the defendant corporation; that on August 16, 1886, they filed a declaration of incorporation (which is set out as an exhibit) fixing the capital stock at $50.000, and on the same day received a commission to open books of subscription; that on August 20, 1886, they made a return of their proceedings under the commission and a certificate of incorporation was issued, and the corporation commenced and continued its business until its failure; that a few weeks prior to August 16, 1886, Dimmick, Baldwin, and Chambers and others became purchasers for not exceeding $10,000 in cash, and a promise to assume certain debts of the Montgomery Iron Works Com-

pany at the First National Bank of Montgomery, of which W. L. Chambers, Dimmick and Baldwin were officers, and for a small amount of stock in the defendant corporation to be issued to G. B. Wilkins, Geo. M. Wilkins and McAdams, who were in the control and management of the property so purchased; that the whole price was less than $25,000, and the same property was within a month conveyed by Dimmock, Baldwin and Chambers to the defendant corporation for $80,000, but the property was then worth less than $25,000, and it was bought with the purpose of conveying to the defendant corporation at a fictitious price; that the $80,-000 was paid by issuing $50,000 paid up stock and by $25,000 in cash, raised from the sale of bonds, the balance paid in some way unknown to complainant; that Dimmick, Baldwin and Chambers were, in fact, the subscribers for all of said $50,000 of stock, and had it distributed among themselves and others. They never made any other payment. The above was carried out by Dimmick, Baldwin and Chambers, who controlled the directors and stock of the defendant corporation; $25,-000 of said bonds were sold at par, and the proceeds paid to said Dimmick, Baldwin and Chambers; that Dimmick, Baldwin and Chambers never did pay any of the debt of the Montgomery Iron Works Company at the First National Bank agreed to be paid on the purchase of said property, but the debts of the Montgomery Iron Works Company were transferred to the account of the Montgomery Iron Works, so that said property so conveyed for $80,000 was in fact to some extent paid for by said Montgomery Iron Works itself; that said Dimmick, Baldwin and Chambers conspired among themselves prior to the organization of the defendant corporation to buy and resell said property to the defendant corporation at a fictitious price, for the purpose of hindering, delaying and defrauding the subsequent creditors of the Montgomery Iron Works, who might give credit upon the faith that said $50,000 had been paid in money, when in fact said stock was not paid except to a small extent, and it was well known to Dimmick, Baldwin and Chambers that the property they sold to the defendant corporation was not worth exceeding $15,000, and they

[Montgomery Iron Works *et als.* v. Capital City Insurance Co.]

committed a fraud upon complainant and the other subsequent creditors of the defendant corporation; that there was no written subscription by the subscribers for said stock wherein a reservation was made to pay their said subscriptions in property, and said subscription could only be paid in money, and all of said subscriptions are due, except the actual cash value of said property conveyed; that Dimmick, Baldwin and Chambers are jointly liable for said $80,000 less $15,000, the value of the property conveyed; that Craik was a subscriber to the amount of $4,600 and never paid for the same except through Dimmick, Baldwin and Chambers, as above, and is indebted in a large amount for his subscription; that Dimmick and Baldwin each subscribed for $9,200 of said stock, and are entitled to be credited their proportion of the value of the property conveyed.

By the bill as amended on September 16, 1901, the complainant sought to have discovery made by the defendants of all the facts relating to the transactions referred to in the bill, and for this purpose propounded several interrogatories to be answered by said defendants, by means of which discovery was sought as to the details of said several transactions. This bill was verified by the affidavit of William Berney, who stated in his affidavit that he "was president of the Capital City Bank, which is a legal successor of the Capital City Insurance Co.", and was authorized to make the affidavit in behalf of the complainant corporation. The said Berney in said affidavit stated as follows: "I have known of the allegations of the foregoing bill and state that the same are true as therein alleged when stated upon knowledge, and when stated upon information I believe them to be true."

The defendants, J. W. Dimmick, A. M. Baldwin, and G. W. Craik, severally and separately objected to the allowance of the amendment to the bill as filed on September 16, 1901, upon the same was a departure from the cause of action involved in the original bill; that it was contradictory and repugnant to the original bill, and that the said amendments seek to bring in matter which is stale and barred by the statute of limitations as new

matter or claim, which was not involved in the original cause of action. The said defendants also jointly and separately moved to strike said amended bill upon the following grounds: "1. The same seeks to bring in matter which is stale and barred by the statute of limitations as new matter or claim, by way of amendment, which is not involved in the original cause of action sought to be litigated in the original bill as amended heretofore. 2. No order of court has been made permitting the same to be filed or allowing it as an amendment to the bill of complaint as theretofore amended or as an amended bill. 3. Said bill as amended on September 18, 1901, seeks a recovery upon a different right from that upon which it sought a recovery either by the original bill or by the bill as first amended, and is a departure from the original bill. 4. Said bill seeks to convert a bill to compel the payment of stock subscriptions and to recover for a fictitious issue of bonds by a judgment creditor into a general creditors' bill for an accounting for property fraudulently conveyed."

Said defendants Dimmick, Baldwin and Craik also jointly and separately demurred to the bill as amended on September 16, 1901, upon several grounds which may be summarized as follows: 1. It appears that complainant's said judgment and its only right of action against these defendants, grows out of and is based on bonds which constitute part of the identical issue of bonds sought to be impeached herein as fraudulent. 2. Said bill shows on its face that complainant stands in the shoes of one who is *in pari delicto* with these respondents, and does not show when it became a creditor of the Montgomery Iron Works, or any actual fraud by these respondents or any of them aimed at or effecting said complainant or any class of creditors of the said Montgomery Iron Works to which complainant belongs. 3. Said bill as amended fails to show any actual fraud committed by these respondents or any of them at the time of or subsequent to complainant becoming a creditor of said Montgomery Iron Works, or any actual fraud theretofore committed by these respondents or any of them aimed at or effecting complainant or any class of creditors of said Montgomery Iron Works to which com-

plaiuant belongs. 4. The bill is multifarious in that it is not shown that Craik had anything to do with the frauds alleged to have been committed by Dimmick, Baldwin and Chambers, or that Craik received any of said bonds or the proceeds thereof. 5. It appears on the face of said bill as amended that complainants alleged right of action sought to be enforced herein was, as against these respondents and each of them, barred by the statute of limitations prior to the 17th day of January, 1896, when the original bill was filed in this cause. 6. If the said Montgomery Iron Works ever had a right of action against these respondents or any of them on account of the matters complained of in the bill as amended, it appears that the same accrued to it more than six years prior to the 17th day of January, 1896. 7. Said bill as amended on September 16th, 1901, seeks a recovery upon a different right from that upon which it sought a recovery either by the original bill or by the bill as first amended in this cause, and is a departure from the original bill. 8. Said bill as amended seeks to convert a bill to compel the payment of stock subscriptions and to recover for a fictitious issue of bonds by a judgment creditor into a general creditors' bill for an accounting for property fraudulently conveyed. 9. Said bill purports to be filed in the name of the Capital City Insurance Company and on behalf of other creditors, and yet the relief sought is only as to the Capital City Insurance Company. The defendants jointly and separately demurred to so much of said bill as seeks a discovery by them upon the following grounds: 1. Said bill as amended is not properly verified by affidavit of a competent witness as to the truth of the statements contained therein. 2. Said bill as amended shows on its face that it is a mere fishing bill. The said defendants also moved the court to dismiss the bill for the want of equity.

On the submission of the cause upon the objections to the allowance of the amendments, on the motion to strike said amendment, and on the demurrers to the amended bill; and also the motion to dismiss the bill for the want

of equity, the chancellor rendered a decree overruling said objections, said motion and the demurrer. From this decree the respondents appeal, and assign the rendition thereof as error.

WATTS, TROY & CAFFEY, for appellants.—The averments of the bill show that the Montgomery Iron Works was organized prior to the Code of 1886. The law in force at the time this corporation was organized did not require that the property conveyed in payment of stock should be equal in value to the stock, in payment of which it was conveyed, as required by the law in force at the time the original bill was filed and as required by the law in force now. That being the case, the contract between the subscribers and the corporation in this case was valid and no subsequent creditor can attack it and make a different or new contract between the corporation and its subscribers for stock, as this bill attempts to do.—*Nelson v. Hubbard,* 96 Ala. 238, 250; *M. & L. R. R. Co. v. Dow,* 120 U. S. 287; Code of 1876, § 1805.

The claim attempted to be set up in the amended bill is a clear departure, as shown by the original and amended bills above set out. A different claim upon a different state of facts is sought to be enforced and it is also sought to bring in other parties plaintiff who were never parties plaintiff until the last amendment. The bill is by the amendment changed from a bill by one judgment creditor to a general creditors' bill for all creditors who may chose to come in. These creditors are barred by the statute of limitations. Not only does the amendment present a case with new parties plaintiff, but as shown by the statement of the original and amended bills, presents a new case entirely. Not only that. While the bill makes all creditors of the Montgomery Iron Works who choose to come in parties plaintiff, the prayer is for relief to the original plaintiff only. This claim set up in the amended bill was barred by the statute of limitations before the amendment was allowed.—*McDonough v. Thompson,* decided by the Supreme Court of the U. S. Feb. 3d, 1902; Wood on Limitations (3d ed.), 150; *Baltimore, etc. R. R. v. Glenn,* 28 Md. 287; 1 Cook on Corp., § 195; *Glenn v. Marbury,* 145 U. S. 499; *Hawkins v.*

[Montgomery Iron Works *et als.* v. Capital City Insurance Co.]

*Glenn,* 131 U. S. 319; *Glenn v. Liggett,* 135 U. S. 533; *McDonald v. Ala. etc. Ins. Co.,* 85 Ala. 421; *Chamberlain v. Bromberg,* 83 Ala. 576; *Mardis v. Shackleford,* 4 Ala. 493; *Kimbro v. Waller,* 21 Ala. 376; *Priest v. Glenn,* 48 Fed. Rep. 19, 51 Fed. Rep. 405; *Thompson v. German Ins. Co.,* 77 Fed. Rep. 258.

The right to maintain the present bill is barred by the statute of limitations. The statute of limitations begins to run in favor of the stockholders against a debt due the corporation at the same time it commences to run in favor of the corporation; that is, when the debt matures, that is, when the subscription was made.—1 Cook on Corporations, §§ 195, 225, note 2, page 435; *Hamilton v. Clarion,* 144 Pa. St. 34; *Garesche v. Lewis,* 93 Mo. 197.

GUNTER & GUNTER, *contra.*—The plaintiff is a judgment creditor with execution returned "no property," and if it is *in pari delicto* it must be shown by pleading and proof, not presumption on demurrer. The bondholders who hold under assignment are entitled to protection, though the original parties might not be able to obtain relief. These bonds are lawful charges against the corporation, but the defendants not having paid for those they got, should account to the creditors for what they have collected on them, or for what they sold them, because they have taken the assets of the corporation to that extent without consideration. The necessary result of selling property in payment of subscription at an exorbitant price, is to defraud all subsequent creditors. *Elyton L. Co. v. B. W. & E. Co.,* 92 Ala. 407; 1 Cook on Corp. (3d ed.), § 47 and notes.

The bill is not filed to enforce a stale demand. Staleness *per se* is never shorter than the statute of limitations.—*Herrick v. Tripp, G. L. Co.,* 60 Fed. 80-81; *Scruggs v. Decatur, etc.,* 86 Ala. 177; *Shorter v. Smith,* 56 Ala. 210.

The bill could not be maintained as a general creditors' bill.—*Brown v. Bates,* 10 Ala. 433; 1 Ency. Pl. & Pr., 484, note 2.

DOWDELL, J.—The appeal in this case is prosecuted from the decree of the city court overruling the respondents' demurrer to the bill and motion to dismiss the same for want of equity. On such appeal rulings of the court on objections to the allowance of an amendment to the bill, and on motion to strike the amendment, can not be considered, although such rulings may be embodied in the decree on the demurrer. The decree is interlocutory, and the appeal is allowable only by virtue of the statute, and cannot be extended by the court to other interlocutory orders than those mentioned in the statute. The assignments of error relating to the court's action on objection to the amendment and motion to strike are, therefore, not to be considered by us. The question, however, on the amendment, as a departure, is also presented by the demurrer to the bill, and to that extent, is properly before us by the appeal.

The bill was originally filed by the complainant as a judgment creditor, and sought to condemn equitable assets of the judgment debtor corporation in the hands of other defendants, to the satisfaction of complainant's judgment. In such proceedings other judgment creditors owning distinct judgments, might have properly joined with the complainant in the suit.—*Brown v. Bates*, 10 Ala. 433. If other creditors might have originally joined in the suit, we see no reason why they may n t subsequently be let in by amendment, though the effect be to change the bill from one by the individual creditor, into a common creditors' bill. The theory of the original bill as to the liability of the defendants on their subscriptions for stock, and the purpose to compel payment on such liability, is clearly preserved in the bill as amended. It is true, as stated by the learned judge, who heard the cause below, that the amended bill is amplified by the allegation of actual fraud in addition to the constructive fraud imputed to the facts alleged in the original bill under the provisions contained in the constitution and statute, but this did not change the nature of liability on account of stock subscribed for by the defendants. By the amendment, the complainant also

10c

seeks to further increase the liability of the defendants Dimmick and Baldwin by alleging as a part of the same fraudulent scheme to get stock for less than its value, they got $25,000 of the corporation's money for nothing. We concur in the conclusion of the city court, that the amendment did not work a departure.

It is contended by counsel for appellants, that the averments of the bill show that the Montgomery Iron Works was organized prior to the Code of 1886, and that the law in force at the time of its organization "did not require that the property conveyed in payment of stock should be equal in value to the stock, in payment of which it was conveyed as required by the law in force at the time the original bill was filed and as required by the law in force now." And upon this contention, it is further contended that the bill is without equity. This question was thoroughly considered by this court in the case of the *Elyton Land Co. v. Birmingham Warehouse & Elevator Co.,* 92 Ala. 407, where it was held that there was no distinction in principle as to liability on account of subscription for stock under section 1805 of the Code of 1876, and section 1560 of the Code of 1886. The purpose of both statutes being the same, to prevent the perpetration of frauds upon creditors by creation of fictitious values and false credit based on watered stock. The decision in the case above cited fully answers appellants' contention.

The discovery sought is incidental to the main object of the bill. In such case verification of the bill is not required.—*Burke v. Morris,* 121 Ala. 126; *Plaster v. Throne-Franklin Shoe Co.,* 123 Ala. 365.

The bill shows that the complainant recovered a judgment against the respondent corporation, Montgomery Iron Works, November 21st, 1895, upon which execution was issued and returned no property. Until this was done, the complainant's right to maintain the present bill did not exist, or in other words, its right of action had not accrued. The statute of limitations does not begin to run until the right of action has accrued.—*Washington v. Norwood,* 128 Ala. 383. The original bill was filed January 17th, 1896,

and the last amendment was filed September 16th, 1901. So it is made clearly to appear on the face of the bill, that the amendment was filed within six years after the right of action accrued.

The bill as amended is not objectionable on the ground of multifariousness.—*Hall & Farley v. Henderson,* 114 Ala. 601; *Burke v. Morris,* 121 Ala. 130; *Allen et al. v. Montgomery R. R. Co.,* 11 Ala. 437.

The decree of the city court overruling the demurrer and motion to dismiss is free from error, and the same will be affirmed.